## EL PASO ELECTRIC RY. CO. v. CREWS.
### (No. 1800.)

(Court of Civil Appeals of Texas. El Paso.
Nov. 12, 1925. Rehearing Denied
Dec. 3, 1925.)

**1. False imprisonment ⟨≈⟩31—Evidence held not to sustain finding street car company caused arrest.**

Evidence *held* not to sustain jury's finding that defendant street car company caused plaintiff's arrest for robbery.

**2. False imprisonment ⟨≈⟩15(3)—Conduct of street car conductor in feigning robbery held not to make company liable for false imprisonment.**

Even if conduct of street car conductor in feigning robbery, not done at company's request, caused police officers who were near by to arrest plaintiff for robbery, such arrest *held* independent act of police officers, not making company liable for false imprisonment.

Appeal from District Court, El Paso County; Ballard Coldwell, Judge.

Action by O. T. Crews against the El Paso Electric Railway Company and others. Judgment for plaintiff against the named defendant, and it appeals. Reversed and rendered.

Goggin, Hunter & Brown, of El Paso, for appellant.

John T. Hill and Chas. Owen, both of El Paso, for appellee Crews.

J. C. Brooke, of El Paso, for appellees Scurlock, Campbell, and Johnson.

WALTHALL, J. The following statement of the nature and result of the suit is taken from appellant's brief, which we find to be a substantially correct statement of the issues presented by the record.

"This was an action in damages brought by O. T. Crews, plaintiff, against the El Paso Electric Railway Company, Frank B. Scurlock, George M. Campbell, and T. D. Johnson, defendants, for false imprisonment.

"The plaintiff alleged that the defendants, acting together, and the defendant company acting with its codefendants, and by and through them, and their agents, and by and with other persons whose names were unknown to the plaintiff, entered into a conspiracy and combination, whereby the plaintiff was arrested for the pretended offense of robbery of the defendant company; that it was agreed by the defendants and other officials and employees of the company that the plaintiff was to be arrested when he appeared at the end of one of the defendant's street car lines for the purpose of collecting a debt owed by the defendant Johnson and guaranteed by the plaintiff; that this arrest was to be made on the pretense that the plaintiff, Crews, was attempting to rob the defendant Johnson of street car fares which he had collected for the company; that defendant Johnson was one of the defendant company's street car operators, and an old acquaintance of the plaintiff; that the conspiracy was carried out, and plaintiff was arrested by police officers of the city of El Paso, Houston, and Escontrias; that the officers were present, but concealed, when the plaintiff, Crews, approached the street car and Johnson for the purpose of collecting his debt, and fraudulently arrested plaintiff; that Officer Houston drew a shotgun on plaintiff while arresting him, and after taking him in custody violently assaulted him, striking him with his gun, knocking him unconscious, and afterward forcing him, by violence and threats, to make a false confession of guilt; that after making this confession he was taken by the police officers to jail, and, on the next day, having gone before a magistrate, was discharged; that the company as well as the other defendants and the company's agents knowingly and intentionally misinformed the police officers falsely inducing them to believe that a robbery was about to be committed, thus bringing about the plaintiff's arrest and detention.

"The defendant El Paso Electric Railway Company, after interposing various demurrers, answered by a general denial and exceptions, and general denials were filed by each of the other defendants.

"The court submitted the case to the jury upon special issues.

"The jury found: (1) That the defendants, or some of them, caused the plaintiff to be arrested; (2) that the defendant, El Paso Electric Railway Company was the defendant that caused the arrest to be made; (3) that the plaintiff had not attempted to take money or property from the defendant Johnson without the consent of Johnson; (4) that $1,000 would reasonably compensate the plaintiff for injury proximately caused by his arrest and confinement; (5) that at the time of his arrest plaintiff was not attempting a real holdup or robbery of the defendant Johnson; (6) that at the time of his arrest the plaintiff was not attempting to perpetrate or carry out a framed or false holdup or robbery of the defendant Johnson.

"Judgment was entered by the court for $1,000 against the El Paso Electric Railway Company; the plaintiff having dismissed as to defendant Campbell, judgment was entered in favor of defendants Johnson and Scurlock, and that the plaintiff take nothing as to them.

"The defendant company's motion for a new trial having been overruled, defendant excepted and gave notice, and duly perfected its appeal to this court."

By several propositions appellant insists that the court was in error in not directing a verdict in its favor as requested by a charge tendered to that effect. It is insisted that the undisputed evidence shows that the arrest of appellee, Crews, was made by the police officers of the city of El Paso on their own volition, and upon what occurred within the view of the officers themselves just prior to and at the very time the arrest was made, and that the appellant company by any of its officers was neither present at the time of the arrest, nor did they request or direct the arrest made or ratify the arrest after it was made.

It is further insisted that there is no evidence in the record even remotely connect-

ing the appellant with a conspiracy to frame a robbery of Johnson, the conductor of one of its street cars, for the purpose of having Crews arrested, as alleged, or procuring his arrest, and that if any of its servants, agents, or employees in fact caused the arrest there is no evidence showing that such servant, agent, or employee had any authority from appellant company to request or direct, or in any way cause or ratify the arrest or assault upon or detention of Crews. It is further insisted that the exoneration of appellant's codefendants, Johnson and Scurlock, exonerates appellant company of any conspiracy to cause the arrest of Crews.

[1] Without quoting the evidence at length, it sufficiently shows that Johnson was the appellant's street car conductor on its Manhattan car line at the time of the arrest of Crews, and that Scurlock at that time was appellant's superintendent of transportation. Campbell's position with the appellant at the time of the arrest of Crews was that of inspector. Crews had formerly worked for appellant as conductor, but on account of ill health had been discharged. At the time of his arrest Crews was running a service car in El Paso. Crews personally knew Johnson, Scurlock, and Campbell. On the night of the arrest Crews had an engagement with Johnson to see him at the end of the Manhattan car line a little after 12 o'clock, as he says, to collect from Johnson a small bill Johnson owed one King, and for which Crews was security to King. Crews went to the end of the car line just before the appointed time to meet Johnson, and parked his car some 40 feet from where the street car would stop. On the night of the arrest Johnson had seen Crews on his car. On the trial Johnson testified that Crews had proposed to him "to pull a fake holdup with him and split the money," and said to him that he would be out there. Crews denied that he had planned with Johnson or anybody else to rob the car. Johnson reported what he said Crews had said to him to Charlie Woods, Scurlock's stenographer, and told him to report it to Scurlock. Johnson said nothing to the police officers about it. Woods told Johnson the police officers would be at the end of the car line that night. Johnson did not agree to the holdup, as he said Crews had proposed.

Capt. S. C. Houston, a city policeman, testified:

He and Juan Escontrias went out to the end of the Manhattan car line to make the arrest. "The information to go out there was given to me by a street car man at Five Points. I can't recall his name. It wasn't Johnson; it was some trainman. * * * He told me that there was a man riding in an automobile that they expected to hold up the street car. Somebody had given the information. They told me it would be a late car at the end of the Manhattan street car line. They told me that along about 10 o'clock at night. * * *

As to whether I acted on this man's statement to me: There had been so many holdups we acted on any kind of information to catch these men. There had been a good many holdups at that time, but we never caught any except this one. Nobody was held up after this man was arrested. * * * No street car employee, and no one connected with the street car company asked me to arrest Crews or anybody else that night. I acted on my own initiative. They did not ask me to take Juan Escontrias or any other officer out with me that night. I did it of my own accord. No officer of the street car company or agent told me what to do or how to do it, or what they wanted or that they wanted anything that night. I filed a written complaint against this man. As to whether any officer or agent or any employee of the El Paso Electric Railway Company requested me to do that: I never saw one of them after the arrest. I had not seen any of them about this before the arrest but the trainman. He was an operator just like Johnson; he had on a trainman's cap. I don't believe his name was Woods or Newport; I have his name on the records. * * * I arrested Crews that night for highway robbery. It was on account of what I saw him do out there that night, and I did it on my own accord. The defendants Johnson, Scurlock, or Campbell never asked me to arrest him. I never talked to them about the case. * * * I acted from the information I had received. I acted on my own personal information after I had the information. I had the information, then I went on and acted under it; that was the cause of my actions. I believed it to be true, and I was acting in good faith."

After detailing the circumstances, the witness said:

"It looked like a real holdup to me at that time, and I thought it was. Previous to the arrest I heard Crews tell him (Johnson) to throw up his hands."

Several witnesses testified as to what occurred at the time of the arrest. Escontrias testified that he was acting under the direction of Capt. Houston in making the arrest. We have found no evidence in the record other than the above that seems to bear upon the issue as to appellant's liability for the arrest, or that one connected with the company knew of the circumstances leading up to the arrest of Crews, or of the arrest, or that an arrest had been made.

The trial court did not submit the issue, alleged in the petition, that the appellant company, "acting with its codefendants and by and through them and other agents and officers * * * entered into a conspiracy * * * whereby the plaintiff was to be arrested for the pretended offense of robbery of the defendant company," but as to appellant's participation in the arrest submitted only the question as to whether "the defendants, or some of them, caused the plaintiff to be arrested," and if they or any one of them did so then, "which of the defendants do you find from a preponderance of the evidence caused such arrest." And the jury answer-

ed: "The El Paso Electric Railway Company."

The only inquiry as to appellant's participation in the arrest, under the facts submitted, is: Does the evidence show that the appellant company requested or directed the arrest of appellee?

The three, alleged to have been coconspirators and agents, servants, and employees of appellant, Campbell, Scurlock, and Johnson, and as in any way having caused or participated in any of the matters disclosed by the evidence leading up to the arrest of appellee, were either discharged or found not guilty of causing the arrest. The appellant, a corporation, if acting at all in causing the arrest, must have done so by and through some one or more of its servants or employees either expressly or impliedly authorized to act for it in causing the arrest. But the jury found that only the appellant company "caused" the arrest, and thereby acquitted the employees. The evidence wholly fails to suggest that any officer of the company in any way requested or directed the arrest, or even informed the police officers making the arrest of any fact connected with the presence of Crews at the time and place of the arrest. The liability of the company certainly must have for its basis the wrongful act of one or more of those acting for the company in either directing or requesting the arrest.

We prefer to determine the liability of appellant upon other grounds than upon the acquittal of the employees of personal liability in damages for the arrest. The liability of the company would depend upon the participation of its employees in causing the arrest; that is, one or more of the company's employees must have requested or directed the arrest be made, or directly participated in the arrest.

The full extent of the evidence goes no further than that the company's conductor on the street car, without any instruction from the company to do so, informed the police officer making the arrest that a holdup was anticipated at the end of the car line late that night. The street car conductor did not direct or request the arrest nor take part in making the arrest, nor is there any suggestion in the evidence of any collusion between the police officers and any employee of the company, or any attempt to exercise any influence over the officers in making the arrest. The police officers went to the place indicated, and in making the arrest acted, as he said, "upon his own initiative," upon what appeared to him at the time that a holdup was then taking place, and wholly unadvised by anybody as to whether he should or should not make the arrest.

In Joske v. Irvine, 91 Tex. 574, 44 S. W. 1059, our Supreme Court, where Irvine had been wrongfully arrested, made the liability of Joske for the wrongful arrest depend upon whether Joske "requested or directed" the arrest. In discussing the case Mr. Justice Denman said:

"Joske was urging the officers to ferret out and recover if possible his goods which Irvine had received and had not returned, and that both he and the officers were endeavoring to ascertain from Irvine the circumstances attending their loss, so that they might be traced. This Joske had a clear legal right to do, and we are of opinion that from the mere exercise of this right the law will not permit the inference to be drawn that he 'requested or directed' the arrest, though it be conceded that but for its exercise the arrest would never have been made. It would be against reason to hold that the mere fact that a citizen has called upon the officer of the law to search for and recover his lost or stolen property will authorize the inference that he 'requested or directed' the arrest subsequently made."

Joske called the officers to his assistance, and the court said the evidence would justify the finding that Joske was present at the time of the arrest and offered to make the affidavit charging the offense for which Irvine was arrested, but the court held that Joske's presence and such remark did "not tend to show that Joske 'requested or directed' the arrest."

[2] But if it could be said, which we do not concede, that the conduct of Johnson in feigning a holdup, not done at the request of appellant, caused the officers to then arrest Crews, or that had Johnson not pretended to the officers that he was then being held up there would have been no occasion for the arrest, and no arrest would have been made, still the acts of Johnson, not done at the instance of appellant, would have amounted only to an occasion for the officers to observe for themselves and arrest and imprison Crews if they saw proper to do so, and the arrest would not have been by request or direction of Johnson, much less the company; and the arrest would still be an independent act of the officers for which appellant would not be liable. But no one requested or directed the arrest. The undisputed evidence of the officers is that no one induced the arrest.

In Meyer et ux. v. Monnig Dry Goods Co. (Tex. Civ. App.) 189 S. W. 80, a writ of error refused, the manager of the appellee reported the offense to the officer, and pointed Mrs. Meyer out to the officer as the guilty person, and a salesman in the appellee's store, at the request of the officer, overtook Mrs. Meyer and held her by the arm until the arrival of the officer, who took her in custody and immediately imprisoned her. Mrs. Meyer was tried and acquitted of the offense charged. The offense was not committed in the presence of the officer, but what was done in bringing about arrest was done two days before the arrest. Under such circumstances it was held that the arrest and prosecution were solely upon the volition of the arresting

officers, and not upon the request or direction of any of the defendants.

From the above authorities and many others we have reviewed, we have concluded that the evidence does not show the facts necessary to a recovery of damages against the appellant. Other questions than those discussed are presented, but under the views we entertain of those discussed it is unnecessary to discuss them.

The judgment of the trial court is reversed, and judgment is here rendered for appellant.

Reversed and rendered.